UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| CORBIN J. HOWARD, | : | Case No. 3:11-cv-00116 |
|---|---|---|
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| WELLS FARGO HOME MORTGAGE, INC. f/k/a NORTHEST MORTGAGE, INC., et al., | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS[1]

The events Plaintiff Corbin J. Howard describes in his *pro se* Complaint illustrate a history of financial struggles highlighted in part by a partially paid and partially unpaid residential mortgage, two bankruptcy proceedings, a state-court foreclosure action initiated by Defendant Wells Fargo Mortgage, Inc. (Wells Fargo), and Wells Fargo's alleged failure to credit Howard's mortgage account with over $80,000 of his properly made payments.[2] He sums up his problems with Defendants "in one statement: Corbin J. Howard has been taken advantage of by Wells Fargo … and numerous attorneys that have represented these entities, and representatives of these entities, with the intent to discredit and steal his property and his financial future, just to coverup their shortcomings." (Doc. #56, *PageID* #468).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.
[2] Howard's claims against the individual Defendants identified in Howard's Complaint were previously dismissed with prejudice. (Doc. #s 29, 30).

Wells Fargo raises numerous contentions in support of its Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). It maintains, for example, that it is not a "debt collector" under the Fair Debt Collections Practices Act; Howard's fraud and breach-of-contract claims are time barred; and, the doctrine of judicial estoppel bars Howard's Complaint.

Because Wells Fargo seeks a Rule 12(b)(6) dismissal, the Court accepts as true the allegations in Howard's *pro se* Complaint and liberally construes the Complaint in his favor. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). A Rule 12(b)(6) dismissal is set in motion when a Complaint fails to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (internal quotation marks and citation omitted). Under this plausibility standard—which *pro se* Complaints must satisfy, *Ogle v. Columbia Gas Transmission, LLC*, 513 F. App'x 520, 522 (6th Cir. 2013)—"the well-pleaded facts must permit more than the mere possibility of misconduct, they must show that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966 (2007)).

Many of Howard's allegations concern events that occurred before he filed the present case. He explains that he and his wife entered into a mortgage agreement with Defendant Wells Fargo (doing business as Northwest Mortgage) in 1995. Howard and his wife divorced in 1996. Howard's ex-wife filed a Chapter 13 bankruptcy action in April 1997. Later, in February 2000, Howard notified Wells Fargo that he and his wife

had divorced. (Doc. #2, *PageID* #25; Doc. #56, *PageID* #465).

Howard asserts that Wells Fargo stopped sending him mortgage statements around October 1998. In March 1999, Wells Fargo filed a foreclosure notice in state court. Howard later agreed (in February 2000) to pay Wells Fargo $4,800 per month to stop the foreclosure proceedings.

In February 2000, a letter was sent confirming approval of a loan modification. (Doc. #2, *PageID* #26). Howard explains that he brought his mortgage current by May 2000. He alleges that in February 2000, a Wells Fargo representative "tried to process a claim for loan modification. This was not discussed with … Howard." *Id*. The same representative sent a letter on February 24, 2000 "confirming the approval of a loan modification restructure for … Howard …" and his ex-wife. *Id*.

Howard next alleges that in March 2000, "the request for loan modification was denied because … Howard and [Wells Fargo] were unable to come to a mutual agreement." *Id*. This is somewhat confusing in light of Howard's allegation that a letter approving a loan modification was sent on February 24, 2000. Perhaps Howard or his ex-wife unsuccessfully attempted to further negotiate a loan modification with Wells Fargo. Regardless of what triggered the denial of loan modification, the occurrence of the denial in March 2000 is accepted as true at this point in the case.

At some point, Plaintiff married Emily R. Howard. They filed for Chapter 13 bankruptcy relief in May 2000. The Howards paid $17,630.30, and this bankruptcy was discharged on January 15, 2003. Yet, only six months later, in June 2003, the Howards refiled for Chapter 13 bankruptcy relief. This case was discharged about six years later

(in April 2009). The Howards paid $37,625.83 in connection with this bankruptcy action.

From March 2009 through November 2010, the Howards paid Wells Fargo $7,192.40 per month. Howard charges, "This has not been accurately credited to [his] mortgage account." *Id*. at 28. Wells Fargo has, according to the Complaint, "willfully not applied payments in order to cause arrearages to apply unjustifiable fees and late charges." *Id*. at 28-29. In September 2010, "Wells Fargo obtained an insurance policy … falsely claiming that Corbin Howard and his ex-wife … will default on their mortgage." *Id*. at 29.

As for relief, Howard seeks a full refund of the approximately eighty-thousand dollars he paid that has not been properly applied to his mortgage account, the deed to the subject property, ten-million dollars in punitive damages, and ten-thousand dollars "to cover the expenses related to this situation." *Id*. at 30.

At the outset of the required Rule 12(b)(6) inquiry, careful reading of Howard's Complaint does not reveal any particular legal theory by invoking a constitutional provision, statute, or common law. This alone is not fatal to his Complaint. *See Johnson v. City of Shelby, Miss*., __U.S.__, __, 135 S.Ct. 346, 347 (2014) ("Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim."); *see also Skinner v. Switzer*, 562 U.S. 521, 530, 131 S.Ct. 1289, 1296 (2011) ("a complaint need not pin plaintiff's claim for relief to a precise legal theory."); *Platt v. Board of Comm'r on Grievances & Discipline of Ohio S.Ct.*, 894 F.3d 235, 246 (6th Cir. 2018) ("plaintiffs are

4

not required to identify specific *theories of relief*; they need only specify a *claim*." (emphasis in original)). And, "*pro se* litigants should not be precluded from resorting to the courts merely for want of sophistication." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).

The search for a viable legal claim in Howard's Complaint—when accepting his allegations as true and liberally construing his *pro se* Complaint in his favor—begins with the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. § 1692a. The FDCPA grows from Howard's Complaint because the bulk of his allegations focus on Wells Fargo's actions in attempting to secure his payment on a mortgage agreement. This claim fails, however, because the Complaint establishes that Wells Fargo was the original creditor in connection with his mortgage agreement and was attempting to collect in its role as the creditor on Howard's mortgage account. An entity that seeks or sues to collect a debt for its own account is a "creditor," not a "debt collector" under the FDCPA. *See Henson v. Santander Consumer USA Inc.,* __U.S.__, __, 137 S.Ct. 1718, 1722-23 (2017). Consequently, Howard's Complaint falls short of showing that the FDCPA prohibited any of Wells Fargo's alleged conduct. *See id.*; *see also Smith v. U.S. Bank Nat'l Ass'n*, No. 4-17cv1142, 2018 WL 1488391, at *7 (N.D. Ohio Mar. 27, 2018). Additionally, Howard's FDCPA claim is time barred to the extent it rests on events occurring more than one year before he filed his Complaint. *See* 15 U.S.C. § 1692k(d); *see also Kafele v. Frank & Wooldridge Co.*, 108 F. App'x 307, 308 (6th Cir. 2004).

Next, Howard's assertions that Wells Fargo failed to properly apply payments he made upon his mortgage account and assessed him improper fees appear to rest (at least

5

in part) on the promissory note he undoubtedly executed in Wells Fargo's favor as creditor. Yet, the breach of the terms of the promissory note—a breach of contract claim—is time barred. Claims upon a promissory note, a negotiable instrument under Ohio law, *see Nationstar Mortgage LLC v. Cruse*, 2:14cv383, 2015 WL 5174640, at *4 (S.D. Ohio Sept. 4, 2015) (Deavers, M.J.) (citing *Deutsche Bank Natl. Trust Co. v. Najar*, No. 98502, 2013 WL 1791372, ¶23 (Ohio App. 8 Dist. April 25, 2013)), are subject to a three-year statute of limitations. *See* Ohio Rev. Code. § 1303.16(G)(3). As a result, Howard's breach of contract claim based on the promissory note he executed is barred concerning events that occurred more than three years before he filed the present case.

Further, Howard's allegations concerning possible fraud committed by Wells Fargo are subject to a four-year statute of limitations. *See* Ohio Rev. Code. § 2305.09(C). His fraud claim is therefore time barred to the extent it rests of Wells Fargo's actions taken more than four years before he filed the present case.

Next, Howard maintains that Wells Fargo "ignored the legal protection provided by [his ex-wife's] bankruptcy…." (Doc. #2, *PageID* #28). This fails to state a viable claim because a debtor does not have a private right of action against a creditor for violation of the discharge injunction pursuant to 11 U.S.C. § 524. *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421-22 (6th Cir. 2000).

Lastly, and perhaps the highest hurdle for Howard's Complaint, is the doctrine of judicial estoppel. "The doctrine of judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *White v. Wyndham Vacation Ownership, Inc.*,

6

617 F.3d 472, 476 (6th Cir. 2010) (quoting, in part, *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808 (2001)). In the context of bankruptcy proceedings:

> "judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" Furthermore..., "judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence."

*Id.* at 776 (quoting, in part, *Browning v. Levy*, 283 F.3d 761, 775-76 (6th Cir. 2002) and citing *New Hampshire,* 532 U.S. at 753, 121 S.Ct. 1808).

Howard failed to disclose this lawsuit in his Chapter 13 bankruptcy petition. *See* Doc. #56, Exhibit D, *PageID* #s 442-43.[3] This omission occurred even though he knew he had filed this case in 2011. As a result of his bankruptcy discharge, and in the event Howard prevailed in this case, he would not be required to share any damages he recovered with any of the unsecured creditors whose liabilities he discharged. Howard's omission of this litigation in the disclosures that he made to the Bankruptcy Court under oath and the penalty of perjury "is tantamount to a representation that the claims do not exist." *Assasepa v. JPMorgan Chase Bank*, No. 1:11cv156, 2012 WL 88162, at *16 (S.D. Ohio Jan. 11, 2012) (Report and Recommendation; Litkovitz, M.J.) (citing *In re Superior Crewboats, Inc.,* 374 F.3d 330, 335 (5th Cir. 2004)); *see Newman v. University of Dayton*, 3:17cv179, 2017 WL 4919225, at *4-6 (S.D. Ohio 2017) (Rose, D.J.). Having gained the advantage of his silence (while under oath) about this case in the Bankruptcy

---

[3] In ruling on Wells Fargo's Rule 12(b)(6) Motion, the Court may consider public records, such as Howard's bankruptcy petition, because he refers to it in his Complaint and it is central to his claims. *See Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

7

Court, judicial estoppel bars him from taking a different position in his present case.

Accordingly, Wells Fargo's Motion to Dismiss is well taken.

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Renewed Motion to Dismiss Complaint (Doc. #53), be GRANTED;

2. Howard's Motion to Confirm Status of Melinda Jo Smith (Doc. #57) be DENIED as moot; and

3. The case be terminated on the docket of the Court.

August 7, 2018                 *s/Sharon L. Ovington*
                                                   Sharon L. Ovington
                                                   United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).